UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE:

*ONE APUS* CONTAINER SHIP INCIDENT ON NOVEMBER 30, 2020

*This Document Relates to Mitsui Sumitomo Ins. Co. of Am., et al. v/ M/V One Apus, et al., Cases No. 21-cv-10177 and 21-cv-10183, Southern District of New York*

---

22-md-3028 (PAE)

**Referral of Claims to Magistrate Judge Pursuant to Settlement Agreement**

**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

CHIDORI SHIP HOLDING LLC, JESSICA SHIP HOLDING S.A., making restricted appearances as Owners and bareboat charterers, respectively, of the M/V ONE APUS (collectively, "Owners") respectfully move this Court, pursuant to Section 3(A) of the Settlement Agreement entered into in this action (ECF No. 575-1) and this Court's retained jurisdiction to enforce that Agreement, for an order referring certain claims to the Magistrate Judge for a ruling.

## BACKGROUND AND FACTS

### A. The Settlement Agreement

On December 8, 2023, the parties to the various lawsuits subject to the above-captioned MDL Action entered into a Settlement Framework Agreement ("SFA") to resolve the claims of Cargo Interests[1] arising from the loss of and/or damage to cargo aboard the M/V ONE APUS (ECF No. 575-1; Declaration of Caroline J. Wilson ["Wilson Decl."] ¶ 3, Ex. A). The SFA established a structured claim submission and adjustment process, under which Cargo Interests would produce documents in support of their right to recover and Owners would evaluate each cargo claim and pay a percentage of the provable damages under the United States Carriage of Goods by Sea Act

[1] "Cargo Interests" being the shippers, consignees, cargo owners, and/or their subrogated insurers seeking recovery for loss off or damage to cargo.

("COGSA"), 46 U.S.C. § 30701 *et seq.* (note). Notwithstanding the general agreement to pay a percentage of provable damages for each claim, Owners expressly reserved four enumerated defenses including: (1) Time Bar; (2) Title/Right to Sue; (3) Quantum of Damage Amount; and (4) Package Limitation. Relevant for the cargo claims subject to this Motion are the Quantum of Damage Amount and Owners Title/Right to Sue defenses. The parties to the SFA agreed that Quantum of Damage Amount defense means that Owners will only settle the measure of damages based on the "provable damages under COGSA." (SFA, Section 2(L)). The Title/Right to Sue defense per the SFA "shall be governed by the general maritime law of the United States of America and/or Rule 17 of the Federal Rules of Civil Procedure. The Settling Cargo Claimant may meet the requirement by providing documentation, including, but not limited to, a subrogation receipt, assignment, or commercial document, showing that the Settling Cargo Claimant possesses the legal right or authority to settle and release the Claim." (SFA, Section 2(L)).

The SFA applies to claims identified in "Schedule C" which represents a master list of applicable legal actions and claims subject to the same. For ease of reference the parties have referenced each particular claim by its "line" number in Schedule C. (ECF No. 575-2)

Section 3 of SFA contains a Dispute Resolution clause that provides that any claim involving a legal/factual dispute may be referred to the Magistrate Judge for determination. The SFA provides that the party requesting referral "shall file any required pleadings or other documents with the Court to request that the Magistrate issue a ruling on the disputed [c]laim." (SFA, Section 3(A)).[2]

**B. <u>The Disputed Claims</u>**

The disputed claims at issue here are subject to *XL Ins. Co., et al. v. All-Ways Forwarding Int'l, Inc. , et al.,* Case No. 21-cv-010177 as part of Schedules C, F, and G, and identified by their reference numbers in Schedule C to the SFA as Lines 117, 125-127, and 128-133; and subject to *National Union Fire Ins. Co. of Pittsburgh, PA,, et al. v. Kuehne + Nagel Inc.,, et al.,* Case No.

[2] Any opposition is due fourteen days thereafter. (SFA, Section 3(A)).

21-cv-010183 as part of Schedule A, and identified by their reference numbers in Schedule C to the SFA as Lines 134-137 (collectively, the "Disputed Claims"). All of these Disputed Claims are represented by the Law Offices of John F. Ryan.

*SDNY 21cv10177 - Sch C*

This disputed claim involves an alleged cargo of bare printed circuit board stuffed into container no. HLBU226773. The NVOCC[3], Danmar Lines AG, issued bill of lading no. HKGA92755, which has not been provided. The container allegedly sustained damage and/or was lost during the incident and XL Insurance Co. seeks recovery of $12,152.00 for the loss.

To date, plaintiff XL Insurance Co. has not provided documentation establishing its subrogation rights by way of a subrogation receipt, proof of payment to its insured, or otherwise. Further, XL Insurance Co. has not produced any documentation supporting the claimed damages or any proof that the goods were, in fact, a total loss. Owners cannot locate container no. HLBU226773 on its lost overboard or transload, i.e., potentially damaged, container lists.

*SDNY 21cv10177 - Sch F*

This disputed claim involves a cargo of printed circuit board stuffed into container no. CAIU4244497. The NVOCC, Danmar Lines AG, issued bill of lading no. HKGA92808 listing Glory Faith (Hong Kong) PCB Co., Ltd. as shipper and Aptiv Services US, LLC as consignee. The container was lost overboard during the incident and Plaintiff Aptiv Services US, LLC, seeks recovery of undeterminable amount for the loss.

To date, plaintiff Aptiv Services US, LLC has not provided any documentation supporting the claimed damages with respect to this cargo.

---

[3] An NVOCC is a common carrier that "'does not operate the vessels by which the ocean transportation is provided; and . . . is a shipper in its relationship with an ocean common carrier." *In re Hapag-Lloyd Aktiengesellschaft*, 573 F.Supp. 3d 934, 948 (S.D.N.Y. 2021). "An NVOCC will issue a bill of lading to the shipper but does not undertake the actual transportation of the cargo. Instead the NVOCC delivers the shipment to an ocean carrier for transportation." *Royal & Sun Alliance Insurance, PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 140, n.2 (2d Cir. 2010).

*SDNY 21cv10177 - Sch G*

Schedule G identified eight containers, of which four appeared duplicative of the four containers in 21-cv-10183 Schedule A, described in more detail below. Of the four non-overlapping containers, two containers, numbered YMMU6056869 and CAIU7962137, were originally excluded from the SFA for being stowed underdeck and no claim documents have been provided for them.

For the last two containers, one of the disputed claims involves a cargo of freezers stuffed into container no. YMLU8784387. The ocean carrier Yang Ming Marine Transportation Corp. issued bill of lading no. YMLUW221001804 listing Homa Appliances, Co. Ltd. as shipper and Electrolux Home Products, Inc. as consignee.

The other dispute claim involves a cargo of chest freezers stuffed into container no. BEAU4528122. The ocean carrier Yang Ming Marine Transportation Corp. issued bill of lading no. YMLUW224001884 listing Hisense Int'l (HK) Co. Ltd. as shipper and Electrolux Home Products, Inc. as consignee.

To date, plaintiff Electrolux Home Products, Inc. has not provided conclusive documentation supporting the claimed damages with respect to these cargos.

*SDNY 21cv10183 - Sch A*

Schedule A identified four containers, which appeared duplicative of four of the containers in 21-cv-10177 Schedule G, described above.

These disputed claims involves cargos of refrigerators stuffed into container nos. YMMU6205582, SEGU4591106, TCNU1885720, and CAIU7693043. The ocean carrier Yang Ming Marine Transportation Corp. issued bill of lading no. YMLUW488029738 listing Electrolux Thailand Co. Ltd. as shipper and Electrolux Major Appliances, NA as consignee.

To date, plaintiff National Union Fire Ins. Co. of Pittsburgh has not provided documentation establishing its subrogation rights by way of a subrogation receipt, proof of payment to its insured, or otherwise. Further, plaintiff National Union Fire Ins. Co. of Pittsburg has not provided documentation supporting the claimed damages with respect to these cargos.

## ARGUMENT

### A. Plaintiff Is Required to Provide Evidence to Support the Extent of Damage Claimed

Under COGSA, a cargo claimant is entitled to recover only the loss it actually incurred, and it bears the burden of proving both the fact and the extent of that loss. Section 4(5) of COGSA is explicit on this point: "In no event shall the carrier be liable for more than the amount of damage actually sustained." To make out a prima facie case, a cargo claimant must show that the goods were delivered to the carrier in good condition and outturned in a damaged condition. *Vana Trading Co. v. S.S. Mette Skou*, 556 F.2d 100, 104 (2d Cir. 1977). "The plaintiff has the burden of proving the amount of damages." *Mitsui Marine Fire & Ins. Co. v. Direct Container Line, Ltd.*, 119 F. Supp. 2d 412, 417 (S.D.N.Y. 2000); *see also Great Am. Trading Co. v. Am. President Lines Ltd.*, 641 F. Supp. 396, 402 (N.D. Cal. 1986) ("In determining damages, the burden of proof never leaves the plaintiff.")

A bare assertion of loss, unsupported by any commercial documents, a survey or inspection report, or other objective evidence establishing the condition and extent of damage to the goods, does not satisfy that burden. Here, the various plaintiffs have not submitted documentation establishing the extent of the claimed damage to the various goods, and the Disputed Claims should accordingly be rejected or reduced to reflect only such loss, if any, as they can substantiate.

### B. Plaintiff Lacks Title to Sue

In those instances in which the plaintiff is an insurance company, that plaintiff needs to be properly subrogated in order to any right to claim for loss of or damage to the goods. *Hsbc Ins. v. Scanwell Container Line*, No. CV 00-5729 SVW (SHx), 2001 U.S. Dist. LEXIS 26908, at *4 (C.D. Cal. July 25, 2001) ("An insurance company plaintiff only has standing to sue as subrogee when it has paid its insured"). These plaintiffs have failed to provide subrogation receipt, evidence of subrogation payment, or other evidence establishing that it stands in its insured's shoes. As such,

these plaintiffs have failed to satisfy its burden of demonstrating title to sue, and its Claim should be rejected on this basis alone.

**CONCLUSION**

For the reasons outlined above, Owners respectfully request that the Magistrate Judge issue a rulings on the Disputed Claims finding that plaintiffs have failed to prove the extent of their damages and/or have not established their right to sue.

Dated: August 4, 2026

By: /s/ Timothy Semenoro

Timothy Semenoro
Robert E. O'Connor
MONTGOMERY McCRACKEN WALKER & RHOADS LLP
437 Madison Avenue
New York, New York 10022
Tel: (212) 867-9500
Email: tsemenoro@mmwr.com
rconnor@mmwr.com

and

Alan Nakazawa
James I. H. Brooks
Caroline J. Wilson
COLLIER WALSH NAKAZAWA LLP
*Pro Hac Vice*
180 E. Ocean, Suite 180
Long Beach, California 90802
Tel: (562) 317-3300
Email: alan.nakazawa@cwn-law.com
caroline.wilson@cwn-law.com

GRANTED. By separate order, the Court will refer the claims in this action to the Magistrate Judge for a ruling.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: August 5, 2026
New York, New York